IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOHNNY LACY,

                                                                             ORDER

                Plaintiff,

                                                        12-cv-397-bbc

      v.

DR. SCOTT A. HOFTIEZER, JAMES GREER,
DR. DAVID BURNETT and DR. BURTON COX,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        Plaintiff Johnny Lacy, a prisoner at the Wisconsin Secure Program Facility, brought this civil action alleging that defendant prison officials, Dr. Scott Hoftiezer, James Greer, Dr. David Burnett and Dr. Burton Cox, have acted with deliberate indifference by failing to adequately treat his hepatitis C, diabetes and severe pain. He contends that they should have arranged for pancreas and liver transplants for him and should be allowing him methadone for his severe pain.  Now before the court is defendants' motion for summary judgment. Because plaintiff has failed to show that a reasonable jury could find that any of the defendants were indifferent to his medical problems, he cannot state an Eighth Amendment claim against them.  Accordingly, I will grant defendants' motion.

        From the parties' proposed findings of fact and the record, I find that the following facts are undisputed.

1

UNDISPUTED FACTS

At the outset, I note that plaintiff attempts to dispute many of defendants' proposed findings of fact without citing to admissible evidence in support of his assertions as required by this court's summary judgment procedures. I will disregard those unsupported assertions. In addition, plaintiff objects to many statements regarding medical issues made by defendant Cox, asserting that there is no proper foundation for his testimony. I will disregard plaintiff's objections because Cox is a physician who is qualified to make assertions about medical treatments.

A. Parties

At all relevant times, plaintiff Johnny Lacy was confined at the Wisconsin Secure Program Facility. Defendant Burton Cox, D.O., is currently employed by the Wisconsin Department of Corrections as a physician at the Wisconsin Secure Program Facility. David Burnett, M.D., is employed by the Department of Corrections as medical director of the Bureau of Health Services. As medical director, Burnett has direct supervisory authority over the bureau's staff physicians and psychiatrists, including those employed at the Wisconsin Secure Program Facility. Occasionally, Burnett will participate in responding to "Class III" offsite treatment requests and also in conference calls with practitioners to provide recommendations for inmate patient care.

Defendant Scott Hoftiezer, M.D., is an associate medical director of the Bureau of Health Services. Hoftiezer is also employed by the department as a physician at the Dodge

Correctional Institution.  Defendant James Greer is employed by the department as the director of the Bureau of Health Services.  He is not a medical doctor.

### B.  Plaintiff's Claims

This case is limited to claims regarding plaintiff's hepatitis C, diabetes and severe pain, including his claims that he should be put on the transplant list for liver and pancreas transplants. Hepatitis C is an infection caused by a virus that attacks the liver and leads to inflammation.  Hepatitis C is one of several hepatitis viruses and is generally considered to be among the most serious.  Hepatitis C infection that continues over many years can cause significant complications, such as scarring of the liver tissue (cirrhosis), liver cancer or liver failure.  Hepatitis C infection is treated with antiviral medications intended to clear the virus from a patient's body.

In early cirrhosis, it may be possible to minimize damage to the liver by treating the underlying cause.  In this case, medications are used to control damage to liver cells caused by hepatitis C.  Liver cirrhosis makes it more difficult for a person's liver to remove drugs from his system. For this reason, treatment providers avoid aspirin, ibuprofen and naproxen. Acetaminophen may be recommended in low doses for pain relief, though these types of drugs carry some risks to the liver as well.

In advanced cirrhosis, the liver no longer works.  A liver transplant is a treatment option for people who have end-stage liver failure that cannot be controlled by using other treatments and for some people with liver cancer.  For people with the hepatitis C infection,

a liver transplant is not a cure. Treatment with antiviral medications usually continues after a liver transplant, since hepatitis C infection is likely to recur in the new liver. The number of people waiting for new livers is much larger than the number of available livers, so liver transplant is reserved for people who are critically ill. It is defendant Cox's belief that plaintiff does not meet the criteria for a liver transplant because he is not at end-stage liver failure.

Patients with liver disease may develop acute or chronic pain from a variety of causes. Management of pain in patients with liver disease raises special concerns. Methadone is not advised in severe liver failure. Defendant Cox believes that methadone or opioids are not appropriate because they are especially toxic in patients with impaired liver function and chronic pain is not best treated with opiates. (I understand plaintiff to be arguing that defendant Cox is lying when he says that methadone is inappropriate because ibuprofen, a drug Cox prescribed plaintiff for a time, has the same harmful effects on the liver. However, plaintiff is not qualified to say that both drugs have identical negative effects, and Cox makes it clear that methadone has the added problem of being inappropriate for chronic pain.)

Type 2 diabetes is the most common form of diabetes. Because type 2 diabetes occurs as a result of the body's inability to use insulin properly, rather than because of a problem with insulin production in the pancreas, a pancreas transplant is not a treatment option for most people with type 2 diabetes. It is defendant Cox's belief that plaintiff does not meet the criteria for a pancreatic transplant.

4

C. Medical Treatment History

Plaintiff was transferred to the Wisconsin Secure Program Facility on January 31, 2012, where Nurse Waterman performed an intake review and transfer screening, noting that plaintiff had hepatitis C, type 2 diabetes, diabetic neuropathy, hypertension, esophageal varicies, and ulcerative colitis. (As stated above, this case is limited to claims regarding plaintiff's hepatitis C, diabetes and severe pain). Nurse Waterman further noted that he had allergies to PCN, tramadol, and codeine. Plaintiff was placed on a treatment care plan for his chronic pain, diabetes, and hepatitis C.

On February 1, 2012, defendant Cox ordered lab tests for monitoring diabetes and thyroid. Cox ordered plaintiff a regular diet with a diabetes management bedtime snack on February 9, 2012. On February 12, 2012, plaintiff filed a health service request stating that he was in excruciating pain. Cox responded by stating, "You're going to have to learn to live with your pain without opiate narcotics. You were caught diverting you[r] methadone, again." On February 14, 2012, Cox saw plaintiff for discussion of his pain, past workups and his requests for a "no kneel" restriction, methadone and an abdominal binder. From the discussion and from his examination of plaintiff, Cox decided that no binder was needed. Plaintiff disagreed with this decision. Cox prescribed 20 milligrams of pantoprazole twice a day for one year and ordered x-rays of plaintiff's spine and knees for review of his chronic pain and degenerative joint disease. Cox ordered lab tests for monitoring liver function for hepatitis C.

On February 20, 2012, x-rays showed mild degenerative changes of plaintiff's cervical

spine and normal knees with no fracture or dislocation seen. (Plaintiff states that "x rays do not show soft tissue/damages, as I've been informed by several WDOC doctors, including Cox, so, there would be no evidence on x rays to show the extent of damages to the cartilage and the fluids involved in keeping the knees functional.") Cox ordered that plaintiff be given an extra pillow for his chronic pain, 400 milligrams of ibuprofen four times a day for one year with food for pain and TED compression stockings to treat dependant edema.

Cox ordered analgesic cream for plaintiff's joint and muscle discomfort on February 28, 2012. On February 29, 2012, Cox ordered a liver ultrasound for liver cancer surveillance. On March 12, 2012, Cox prescribed 2000 units of vitamin D four times a day for one year.

On March 15, 2012, plaintiff refused to come out of his cell for an appointment with Cox because he refused to kneel for escort. Cox ordered a podiatry consult with the University of Wisconsin Hospital and Podiatry Clinic for review of plaintiff's diabetes management and neuropathy. (Plaintiff disputes this, stating that Cox sent him for a toenail trimming and a check on the diabetic neuropathy in the plaintiff's lower legs and feet. Dr. Jill Migon trimmed the plaintiff's toenails and ordered Lamisil cream to be applied two times a day. Plaintiff states that defendant Hoftiezer called in this order to the prison that day.)

On April 9, 2012, defendant Cox ordered accuchecks of plaintiff's blood sugar as needed for symptoms of hypoglycemia. On April 11, 2012, plaintiff had an ultrasound of the right upper quadrant of his abdomen for monitoring of his hepatitis C. It was noted the ultrasound was limited by excessive bowel gas but thatno evidence of hepatic cellular disease

except for a slightly dense liver. No ascites, renal or hepatic masses were noted either.

On April 23, 2012, Cox ordered Reguloid capsules for constipation and a chest X-ray to evaluate complaint of shortness of breath. On April 28, 2012, Cox renewed plaintiff's prescription for 80 milligrams of furosemide twice a day for one year. On April 30, 2012, plaintiff's chest X-ray showed a normal chest examination, without tuberculosis. Also on that date, Cox noted that he consulted with Dr. Chan of UW regarding management of plaintiff's type 2 diabetes. Cox further ordered plaintiff 30 milligrams of milk of magnesia at bedtime as needed for constipation for one year.

On May 11, 2012, plaintiff was seen by the UW Podiatry Clinic. Plaintiff was prescribed Lamisil cream to his feet twice a day for fourteen days. On May 14, 2012, Cox continued plaintiff's prescription for 10 milligrams phytonadione (a vitamin K supplement to prevent bleeding in patients with cirrhosis) for one year.

On June 18, 2012, Cox updated plaintiff's diabetes treatment care plan. On July 12, 2012, Cox discontinued his prescription for diphenhydromine because of reports of plaintiff diverting the medication. Cox met with plaintiff on July 19, 2012, when he came to the Health Services Unit to get his toenails clipped. Cox and plaintiff discussed the "DMCCC" (defendants do not explain this abbreviation) and his insulin changes. Plaintiff stated to Cox that he "adjusts" his insulin according to how active he's going to be, usually decreasing his evening doses.

Cox noted the accucheck log showed the "FBS" and evening checks were usually still too high. Cox continued plaintiff's prescription of lisinopril at 20 milligrams for one year for

7

treatment of hypertension and prevention of diabetic kidney disease. Cox further ordered labs for hepatitis C and liver function monitoring to monitor for liver failure, an abdominal ultrasound, and prescribed 500 milligrams neomycin for six days for reducing blood ammonia level. Cox also updated plaintiff's chronic pain treatment care plan.

On July 19, 2012, plaintiff was seen by Lisa Cervantes of the UW GI Clinic for his hepatitis C, cirrhosis and ulcerative colitis treatment plan.

On August 20, 2012, Cox ordered an appointment for plaintiff for his complaints of "abdominal bloating." On August 27, 2012, Cox prescribed plaintiff 25 milligrams of pregabalin three times a day for neuropathic pain from diabetes and fibromyalgia for six months. On September 6, 2012, Cox saw plaintiff for review of his complaints of abdominal wall swelling and his request for a binder. On exam, Cox found the abdomen had general tenderness without masses and concluded that the pain was probably associated with the hepatitis C and cirrhosis and a binder was not indicated. Cox ordered a "U.S. abdominal" for plaintiff's hepatitis C and a vital sign check every month for one year. Cox changed plaintiff's prescription of lisinopril to losarten 50 milligrams once a day for one year and discontinued plaintiff's prescription for pregabalin per his request.

On September 12, 2012, an ultrasound of plaintiff's abdomen was taken for evaluation of ascites regarding hepatitis C, but the test showed no evidence of ascites. A large cystic structure in the left upper quadrant was noted to be possibly related to the kidney. As a result, a CT scan was recommended.

On September 12, 2012, Cox prescribed plaintiff 25 milligrams of amitriptyline at

bedtime for chronic pain/neuropathy for one year. On September 27, 2012, Cox prescribed plaintiff 60 milliliters of lactulose once a day for one year for his complaints of abdomen tenderness.

On October 4, 2012, Cox directed plaintiff be scheduled for a toenail clipping at the Health Services Unit for diabetic foot care. On October 8, 2012, Cox prescribed plaintiff Hydrophor for his feet for diabetic foot prophyllaxis twice a day for one year and renewed his prescriptions for 400 milligrams of mesalamine, two tablets three times a day for one year, a multivitamin 1 tablet daily for chronic health conditions for one year and analgesic cream to be applied to his affected joints and muscles for chronic pain for one year. Cox changed plaintiff's prescription of ibuprofen to 200 milligrams sulindac twice a day as needed for pain for one year.

On October 22, 2012, plaintiff was seen in the Health Services Unit for a toenail trim with bone snips for diabetic foot care treatment. At that time, Cox reviewed with him the results of his lab tests. Cox noted that plaintiff stated that he was taking 24 units of insulin in the morning and 18 units in the evening instead of the prescribed 30 units in the morning and 18 units at bedtime. Cox ordered labs for hepatitis C and liver function monitoring, "DMCCC" with labs and "U.S. abdominal," and changed the Hydrophor to petroleum jelly for his feet as needed for one year.

On November 6, 2012, Cox continued the Lobana lotion for chronic pruritis for six months. On November 7, 2012, Cox requested a CT scan of plaintiff's abdomen due to a large cystic structure in the lower upper quadrant. On November 19, 2012, Cox ordered a

CBC test and an International Normalized Ratio for monitoring of plaintiff's hepatitis C and liver treatment. On November 26, 2012, Cox increased plaintiff's prescription of amitriptyline to 50 milligrams at bedtime for one year. Plaintiff was seen in the Health Services Unit on November 28, 2012, for a lab draw.

On December 5, 2012, defendant Cox asked plaintiff about his recommendation for Cymbalta but plaintiff refused to consider it for his chronic pain issues and also requested to be taken off the amitriptyline. Cox noted that plaintiff had further requested that Dr. Knuppel, the psychiatrist, discontinue his prescription for mirtazapine, a psychotropic medication.

On January 10, 2013, Cox changed the request for the CT scan of the abdomen to a CT scan with a contrast. The CT scan with contrast of plaintiff's abdomen showed hepatic cirrhosis and splenomegaly. Plaintiff was seen in the Health Services Unit on January 16, 2013, for a lab draw. On January 24, 2013, Cox placed plaintiff on an insulin sliding scale for his diabetes and also changed his prescription of insulin to 32 units in the morning and 18 units at bedtime.

On February 5, 2013, Cox prescribed plaintiff 100 milligrams labetolol, twice a day for his blood pressure for 1 month and portal hypertension secondary to cirrhosis. On February 7, 2013, Cox continued plaintiff's prescription of 100 milligrams labetolol twice a day for one year, continued his multivitamin for one year, and clarified that the 800 milligrams mesalamine was to be taken once a day for one year. Cox further ordered lab tests for hepatitis C and liver function monitoring in six months with "DMCCC."

Around this time, Cox went on leave. Physicians from other Wisconsin prisons took over the medical treatment of the Wisconsin Secure Program Facility inmate population. Cox returned around May 13, 2013, and resumed providing medical care. On that day, Cox continued plaintiff's prescription for Lobana lotion for his skin for one year.

At this time, defendant Cox is treating plaintiff's hepatitis C and cirrhosis with medical monitoring, including exams and lab tests and referrals to the University of Wisconsin GI clinic. Cox is treating plaintiff's diabetes with insulin, regular monitoring by him and Dr. Adler, a DOC physician located at the New Lisbon Correctional Institution, along with diet and encouraging plaintiff to exercise to maintain a healthy weight. Cox is treating plaintiff's complaints of chronic pain with capsaicin 0.025% cream, and ibuprofen.

OPINION

Under the Eighth Amendment, prison officials have a duty to provide medical care to those being punished by incarceration. Snipes v. De Tella, 95 F.3d 586, 590 (7th Cir. 1996) (citing Estelle v. Gamble, 429 U.S. 97, 103 (1976)). To state an Eighth Amendment medical care claim, a prisoner must allege facts from which it can be inferred that he had a "serious medical need" and that prison officials were "deliberately indifferent" to it. Estelle, 429 U.S. at 104; Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997).

A medical need may be serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering when treatment is withheld, Gutierrez, 111 F.3d at 1371-73, "significantly affects an individual's daily

activities," Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998), causes pain, Cooper v. Casey, 97 F.3d 914, 916-17 (7th Cir 1996) or otherwise subjects the prisoner to a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 847 (1994). "Deliberate indifference" means that the officials were aware that the prisoner needed medical treatment, but disregarded the risk by failing to take reasonable measures. Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997).

From plaintiff's complaint and materials in support of his motion for summary judgement as well as previous motion for preliminary injunctive relief, I understand that he is seeking liver and pancreas transplants, as well as methadone or other opiate pain medication to treat his severe pain. However, as I explained to plaintiff in the February 4, 2013 order denying his motion for preliminary injunctive relief, prison officials are not deliberately indifferent to a prisoner's medical needs simply because they deny the prisoner the particular medical treatment of his choice. Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). It is not enough for plaintiff to show that he disagrees with defendant Cox's conclusions about the appropriate treatment for his medical conditions, Norfleet v. Webster, 439 F.3d 392, 396 (7th Cir. 2006), or even that Cox could have provided better treatment. Lee v. Young, 533 F.3d 505, 511-12 (7th Cir. 2008). "Mere differences of opinion among medical personnel regarding a patient's appropriate treatment do not give rise to deliberate indifference." Estate of Cole by Pardue v. Fromm, 94 F.3d 254, 261 (7th Cir. 1996). Instead, plaintiff must show that the treatment "decision [wa]s such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person

responsible did not base the decision on such a judgment." Id. at 261-62; see also Snipes, 95 F.3d at 590-91 (plaintiff must show that treatment decision was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate his condition").

Defendants have produced records showing plaintiff's treatment history, have offered expert medical testimony that plaintiff's medical conditions have been treated appropriately and concluded that plaintiff's preferred treatment—liver and pancreas transplants and methadone for his pain—is not appropriate. The summary judgment record details the ways plaintiff's conditions are being treated by defendant Cox:  conducting checks of plaintiff's blood sugar, monitoring his liver function and providing various medications both for pain and for his underlying medical problems.

Plaintiff fell short of proof when he sought a preliminary injunction and he has done no better at the summary judgment stage.  In particular, plaintiff provides no expert testimony indicating that defendant Cox's course of treatment is so far outside the scope of accepted professional standards as to show deliberate indifference.  Accordingly, I will grant summary judgment to defendants on plaintiff's claims against defendant Cox.

With regard to defendants Burnett, Hoftiezer and Greer, 42 U.S.C. § 1983 requires "personal involvement" in an alleged constitutional deprivation for a defendant to be liable. Palmer v. Marion County, 327 F.3d 588, 594 (7th Cir. 2003).  At most, plaintiff suggests that these defendants may have been involved at the margins of a handful of treatment decisions, such as Burnett's being involved in approving off-site treatment requests. However, even assuming that this is the case, plaintiff cannot succeed on any claims against these

defendants now that I have already concluded that he has failed to show that the medical treatment he has received is so far outside the scope of accepted professional standards as to show deliberate indifference.

ORDER

IT IS ORDERED that the motion for summary judgment filed by defendants Burton Cox, David Burnett, Scott Hoftiezer and James Greer, dkt. #45, is GRANTED. The clerk of court is directed to enter judgment accordingly.

Entered this 21st day of October, 2013.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge